UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:17cv87-FDW

| | |
|---|---|
| MICHAEL EUGENE REED, II, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ERIK A. HOOKS, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** is before the Court upon Petitioner Michael Eugene Reed's pro se Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. (Doc. No. 1.)

## I. PROCEDURAL HISTORY

Petitioner is a prisoner of the State of North Carolina who was tried capitally before a Catawba County Superior Court jury in March 1999. The North Carolina Court of Appeals summarized the evidence presented by the State:

> On 20 June 1997, Norah Pope ("Pope") called the Catawba County Sheriff's Department to report a domestic dispute with defendant, her boyfriend. Two deputies responded to Pope's home, and on their advice, Pope swore out four misdemeanor arrest warrants on defendant, including for assault on a female and communicating a threat. The Sheriff's Department last had contact with Pope at about 10 p.m. Lorri Penly, a friend and co-worker of Pope, testified that she spoke with Pope on the phone at 10 p.m. and offered to come to her home. Pope declined, telling Penly that a friend was staying with her.
>
> A few hours later, at 2:48 a.m., sheriff's deputies arrested defendant at his home pursuant to the warrants. At that time, one of the officers tried to contact Pope to notify her that defendant was in custody, but Pope's phone line was busy. Later that morning, Griff Holston, the husband of Suzie Holston ("Holston"), another friend and co-worker of Pope, drove past their workplace, but did not see his wife's car. Mr. Holston then drove by Pope's home and saw the car in the driveway, but got no answer when he rang the doorbell. Neither woman appeared at work as scheduled.

1

Shortly thereafter, deputies from the sheriff's department entered the home, and discovered the bodies of Norah Pope and Suzie Holston. Dr. James Parker, a pathologist who performed the autopsies on both women, testified that they were killed in their sleep by gunshots to the head. The officers saw no signs of forced entry to Pope's home, but discovered that the telephone line had been cut.

When sheriff's department Captain Coy Reid ("Capt. Reid") discovered that defendant was in custody, he brought defendant to an interrogation room and informed him of his *Miranda* rights. Defendant waived his rights to remain silent and to have an attorney present during the interrogation. The interrogation lasted approximately one hour and nineteen minutes. Defendant told Capt. Reid that "he had been in a bad car wreck and it caused damage to his brain." Defendant also said that he should be punished for what he had done, but that it was not first degree murder. Defendant also said that when his father arrived, he would tell Reid everything. Defendant consented to a search of his home and car, and the interview ended.

Later that afternoon, Capt. Reid and a sheriff's department detective interviewed defendant a second time. Defendant waived his rights again and repeated that he would tell everything once his father arrived. Defendant also made several inculpatory statements, although he did not confess to the murders. This second interview lasted approximately fifty minutes.

Tommy Boyette testified for the State that defendant spoke to him while both were in jail awaiting trial. According to Boyette defendant told him how he cut Pope's phone line, entered the home, hid in a closet until Pope and Holston came home, and then shot the two women. Before trial, defendant moved to suppress his statements to Reid and to Boyette. At a hearing on the motions, the interviewing officers and Boyette testifed, as did Dr. Richard Lanham, a clinical neuropsychologist. Dr. Lanham testified concerning defendant's alleged brain injury, establishing that defendant suffered a severe brain injury as a result of a high speed car crash in December 1996. Dr. Lanham further testified that the effects of that injury could have persisted until the time of the murders, and could have affected defendant's ability to knowingly waive his rights and the voluntariness of his statements. The court made findings of fact and concluded that defendant's constitutional rights had not been violated and that his statements to officers and to Boyette had been made voluntarily, knowingly and intelligently. The court then denied the motion to suppress.

State v. Reed, 590 S.E.2d 477, 2004 WL 77759, at *1-*2 (N.C. Ct. App. 2004) (unpublished)

(Reed III).

The jury found Petitioner guilty of one count of first-degree murder by lying in wait and

one count of first-degree murder on the basis of malice, premeditation and deliberation. After a capital sentencing proceeding, the jury recommended life imprisonment on both counts. The trial court sentenced defendant to two consecutive terms of life imprisonment without parole. State v. Reed, 558 S.E.2d 167, 169 (N.C. 2002) ("Reed II").

Petitioner appealed to the North Carolina Court of Appeals, and on April 17, 2001, a unanimous panel of that court concluded the trial court's failure to allow a defense challenge for cause to a prospective juror was prejudicial error and ordered a new trial. State v. Reed, 545 S.E. 2d 249 (N.C. Ct. App. 2001) ("Reed I"). The North Carolina Supreme Court granted the State's petition for discretionary review ("PDR") and, on February 1, 2002, reversed the Court of Appeals' decision. Reed II, 558 S.E. 2d at 174.

The matter subsequently was remanded for the Court of Appeals to rule on the issues raised in Petitioner's appeal that it had not addressed in its 2001 decision. See Reed III, 590 S.E.2d. at *1. The court issued an opinion on January 20, 2004, finding no error. Id. at * 7. Petitioner sought review in the North Carolina Supreme Court, which was denied on April 1, 2004. State v. Reed, No. 232P01-2, 596 S.E.2d 16 (N.C. 2004) (Mem) ("Reed IV").

On December 7, 2016, Petitioner filed a Motion for Appropriate Relief ("MAR") in the Catawba County Superior Court. (Habeas Pet. 3, Doc. No. 1.) It was denied on December 19, 2016. (Pet. 3.) On February 10, 2017, the North Carolina Court of Appeals denied Petitioner's petition for writ of certiorari seeking review of the trial court's order denying his MAR. (Pet. 3-4.) Petitioner next filed a PDR in the North Carolina Supreme Court, which was dismissed on May 3, 2017. (Order Den. PDR 29, Doc. No. 1-2.)

Petitioner filed the instant § 2254 habeas Petition on May 23, 2017, when he deposited it in the prison mail system. (Pet. 14.) Petitioner claims trial counsel were ineffective for failing

3

to: 1) call alibi witnesses to testify during the guilt phase; 2) inform him that prosecutors had interviewed the alibi witnesses; 3) inform him that the alibi witnesses provided defense counsel with exculpatory evidence, which counsel subsequently lost; and 4) present readily available exculpatory evidence at trial. (Pet'r's Att. 2-3, Doc. No. 1-2.) Petitioner also claims the trial court erred in denying two of his challenges for cause during jury selection, refusing to restore his peremptory challenges, and refusing to dismiss the entire jury panel when it was exposed to prejudicial information during voir dire. (Pet. 6-7; Pet'r's Att. 5.) Additionally, Petitioner claims the prosecution engaged in misconduct (Pet'r's Att. 3-4); his appellate counsel had a conflict of interest because he belonged to the same law firm as one of Petitioner's trial attorneys (Pet. 10); the trial court erred in denying Petitioner's motion to suppress his pretrial statements to police (Pet'r's Att. 5-7); and the trial court abused its discretion under N.C. Gen. Stat. § 15A-1233(a) (Pet'r's Att. 7).

## II. STANDARD OF REVIEW

The Court is guided by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, which directs district courts to dismiss habeas petitions when it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief. Rule 4, 28 U.S.C.A. foll. § 2254. In conducting its review under Rule 4, the court "has the power to raise affirmative defenses sua sponte," including a statute of limitations defense under 28 U.S.C. § 2244(d). Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002). The court may dismiss a petition as untimely under Rule 4, however, only if it is clear that the petition is untimely, and the petitioner had notice of the statute of limitations and addressed the issue. Id. at 706–707.

## III. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 provides a statute of

4

limitations for § 2254 petitions by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). The petition must be filed within one year of the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. The limitations period is tolled during the pendency of a properly filed state post-conviction action. 28 U.S.C. § 2244(d)(2).

Petitioner's judgments became final on or about June 30, 2004, 90 days after the North Carolina Supreme Court denied review, see Reed IV, of the Court of Appeals' second decision on Petitioner's direct appeal, see Reed III, and the time for Petitioner to file a petition for writ of certiorari in the United States Supreme Court expired. Clay v. U.S., 537 U.S. 522, 527 (2003); Sup. Ct. R. 13.1 (setting 90-day time limit for filing a petition for writ of certiorari). The statute of limitations then ran for 365 days until it fully expired on or about June 30, 2005. None of Petitioner's filings in the state courts after that date served to resurrect or restart the federal statute of limitations. See Minter v. Beck, 230 F.3d 663, 665–66 (4th Cir. 2000) (recognizing that state applications for collateral review cannot revive an already expired federal limitations period). Therefore, absent equitable tolling or applicability of § 2244(d)(1)(B), (C), or (D), the § 2254 Petition is untimely. See § 2244(d)(1)(A).

Petitioner provides two explanations for the untimeliness of his habeas Petition. (Pet'r's

Att. 8-11.) First, Petitioner asserts that he discovered after trial that his two alibi witnesses, Lloyd and Teresa Duncan, had provided exculpatory evidence to his trial attorneys that would have shown Petitioner could not have driven to Pope's house, committed the murders, and returned home within the time frame the State claimed the murders occurred. (Pet'r's Att. 2, 8.) Attached to the habeas Petition is an affidavit of Lloyd Duncan that describes his interactions with Petitioner and Burke County sheriff's deputies on the night of the murders. (Duncan Aff. 97-99, Doc. No. 1-2.) It also describes a videotape he and Petitioner's ex-wife, with whom Petitioner apparently remained on good terms, made after the murders and gave to Petitioner's trial attorneys, which showed the amount of time it took them to drive from Petitioner's house to the murder scene and back. (Duncan Aff. 98-99.)

Under § 2244(d)(1)(D), the statute of limitations runs from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. Duncan's affidavit was notarized on July 25, 2004. Thus, the latest date Petitioner could have discovered the factual predicate for any claims related to his alibi witnesses and the videotape was July 25, 2004. The statute of limitations ran for 365 days from that date until it fully expired on or about July 25, 2005. As such, the Petition is untimely under § 2244(d)(1)(D), as well.

In McQuiggin v. Perkins, however, the Supreme Court recognized a "miscarriage of justice" exception to § 2244(d)(1)(D). 133 S. Ct. 1924, 1928 (2013). Under that exception, a credible showing of actual innocence may allow a petitioner to pursue his constitutional claims on the merits notwithstanding expiration of the statute of limitations. Id. at 1931. The miscarriage of justice exception applies only to cases "in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" Id. at 1933

6

(quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)) (internal quotation marks omitted). "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324.

The information contained in Lloyd Duncan's affidavit does not constitute "credible evidence" that Petitioner is actually innocent of the first-degree murders of Pope and Holston. The videotape described in the affidavit purports to show that it took Duncan and Petitioner's ex-wife an hour to drive from Petitioner's house to Pope's house and back. (Pet. Att. 98-99.) According to Petitioner, this evidence proves he could not have driven to and from Pope's house and committed the murders in the time the State claimed. Petitioner, however, does not reveal the timeline the State relied upon at trial. Furthermore, the reliability of the videotape is suspect because it was made by people close to Petitioner, and nothing indicates that they conducted their driving experiment at the same time of night, under the same conditions, going the same speed, and taking the same route Petitioner was alleged to have taken. In short, Petitioner has not made a credible showing of actual innocence. See McQuiggin, 133 S. Ct. at 1931.

Next, Petitioner attributes some delay in filing his § 2254 Petition to his efforts to obtain legal assistance in filing for state post-conviction relief. Initially, according to Petitioner, he relied on his appellate attorney's post-appeal assurances that he was going to file "other motions" on Petitioner's behalf "at a later time." (Pet. Att. 9.) Petitioner does not indicate when he realized his appellate attorney was not going to follow through, but he states that his family then hired a lawyer to file an MAR for him. The attorney, according to Petitioner, took his family's money, demanded more money, refused to answer Petitioner's letters or his family's phone calls,

and produced no work product. (Pet. Att. 9-10.) After three and a half years, Petitioner wrote the North Carolina State Bar but was unsuccessful in getting the Bar to take action against the attorney. Petitioner then "looked at law books," "fil[ed] some papers" and obtained an arbitration hearing with the attorney. (Pet. Att. 10.)

Equitable tolling of the statute of limitations is available only when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). Under Fourth Circuit precedent, equitable tolling is appropriate in those "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)) (internal quotation marks omitted).

Petitioner's explanation demonstrates neither diligence in pursuing his rights nor that some extraordinary circumstance stood in his way and prevented timely filing of a federal habeas petition. Petitioner's judgment became final in the summer of 2004, but he did not file his pro se MAR until December 2016. Assuming he spent up to four years attempting to obtain professional legal assistance in filing an MAR, Petitioner has not accounted for the remaining eight and half years. Furthermore, the steps Petitioner took to seek a civil remedy against the post-conviction attorney indicate he was capable of filing a pro se MAR long before 2016.

Additionally, an attorney's ineffectiveness is not considered an "extraordinary circumstance" external to a prisoner's own conduct. See, e.g., Lawrence v. Florida, 549 U.S. 327, 336-37 (2007) (holding attorney miscalculation of deadline is not sufficient to warrant equitable tolling); United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (holding that

8

ignorance of the law is not a basis for equitable tolling in the case of an unrepresented prisoner). In sum, Petitioner has provided no explanation that justifies equitably tolling the statute of limitations for eleven plus years.

## IV. CONCLUSION

Petitioner's § 2254 Petition for Writ of Habeas Corpus is untimely under 28 U.S.C. §§ 2244(d)(1)(A) and (D), and he has not demonstrated entitlement to equitable tolling of the statute of limitations. Accordingly, his § 2254 Petition shall be dismissed.

**IT IS, THEREFORE, ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) is **DISMISSED** as untimely under 28 U.S.C. § 2244(d)(1)(A); and

2. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: June 5, 2017

Frank D. Whitney
Chief United States District Judge

9